20367. BELOTE *v.* THE STATE.

DECIDED APRIL 15, 1930.

*James M. Johnson, H. B. Edwards, Titus & Dekle,* for plaintiff in error.

*G. C. Spurlin, solicitor-general,* contra.

LUKE, J. Pearl Belote was convicted of assault with intent to murder, and assigns error on the overruling of her motion for a new trial.

■ The only special ground of the motion alleges that the court erred in refusing to charge on the offense of shooting at another. In approving the amendment to the motion for a new trial the trial judge said: "The grounds of said amended motion are *with the note attached* hereby approved as true;" and in the note attached he said "The judge's charge submitted duly authorized the jury to find the defendant guilty of unlawful shooting." This is not an unqualified approval. However, an examination of the charge shows that while the court did not read or quote the statute in the order that it is stated in the code, he did so charge on the crime of shooting at another as that the jury could fully understand the nature and elements of this crime and the punishment therefor. There is no merit in the special ground of the motion.

■ Counsel for plaintiff in error insist in their brief that no intent to kill was shown by the evidence. The evidence for the State as a whole discloses that the defendant Pearl Belote was a woman of bad character; that the reputation of the house where she lived was bad; that the reputation of the two women with whom she lived was bad; that she "completely wrecked the home" of the prosecutor, a woman with a husband and six children, by luring the husband away from his wife; that she was seen with the prosecutor's husband on many occasions, and went to his place of business "practically every day;" that she even taunted the prosecutor by writing her, "I have got your husband and you can't get him away from me. You can not turn him against me and you need not try. He does not want you. He does not love you, and if I were in your place and tried to live with a man that didn't care any more for me than that one, I would keep quiet. That is all I am going to tell you."; that she had automobiles which were paid for by the prosecutor's husband; that the prosecutor had made repeated efforts to get the defendant to leave her husband alone, and told the defendant, "I will forgive you for everything you have done, although you have torn up my home and wrecked my life, taken the man I

loved out of my life. . . . I will forgive you. Leave him alone;" that in spite of the pleadings of the prosecutor the defendant continued to pursue the prosecutor's husband, and on the day and night of the shooting the defendant, after coming several miles from another town, continually drove past the house of the prosecutor and continually blew the horn of her automobile; that the prosecutor was at church with one of her little children part of the time when the defendant was driving past her house, but that when she returned from church that Sunday night about 9:15 o'clock she heard the blowing of the horn, and, unarmed in any way, went out in her front yard and asked the defendant, "Who are you looking for?" The defendant then said, "There is the damn bitch," and fired at the prosecutor. The prosecutor testified: "When she cursed me I saw her point the pistol with her right hand. She put her hand in front of the two people who were in the car with her when she shot. She used her right hand. She was holding the steering wheel with her left hand. At the time she fired she cursed me. She did not use my name at all; she did use an epithet to me. I saw the flash of the pistol when she fired. *The pistol was pointed towards me at the time it was fired.* The bullet did not strike me. I heard it whizz like it went by on the right-hand side." Under the circumstances of this case, and where the evidence shows that the defendant had been improperly associating with the prosecutor's husband, and bad feeling existed between the women because of this fact, and the defendant came several miles from another town to the town of the prosecutor's residence, and, after continuously passing in front of the prosecutor's home and blowing the horn of the automobile, slowed down the car, applied a vile epithet to the prosecutor, pointed the pistol at the prosecutor, and fired in such a direction as that the bullet whizzed past the prosecutor's side, the evidence was sufficient to show an intent to kill the prosecutor. Intent is a matter of mind and is evidenced by facts and circumstances capable of proof. It is a matter for determination by the jury, and the facts and circumstances of this case justified their finding. See *Lovett* v. *State,* 9 *Ga. App.* 232 (3) (70 S. E. 989); *Thomas* v. *State,* 37 *Ga. App.* 823 (1) (142 S. E. 195); *Tyre* v. *State,* 112 *Ga.* 224 (1) (37 S. E. 374).

■ The defendant in her statement at the trial did not deny her relation with the prosecutor's husband, and the only two wit-

nesses introduced by her, and who were with her in the car at the time of the shooting, were, in view of the verdict, thoroughly impeached. The evidence abundantly authorized, if it did not demand, the verdict rendered; there is no merit in the general grounds, and the court properly overruled the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*